**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| NEWPORT/GRANADA, L.L.C, ET AL., )<br>)<br>Plaintiffs, )<br>vs. )<br>)<br>WACHOVIA BANK, NATIONAL )<br>ASSOCIATION, ET AL., )<br>)<br>Defendants. ) | NO. CIV-09-0116-HE |

## ORDER

Plaintiffs Newport/Granada, L.L.C., Emerald Court, L.L.C., and Casa Linda Investors, L.L.C. sued Wachovia Bank, National Association ("Wachovia"), LNR Partners, Inc. ("LNR"), and GEMSA Loan Services, L.P. ("GEMSA") alleging breach of contract, unjust enrichment and interference with contract and prospective economic advantage claims. Defendants LNR and GEMSA have filed a motion to dismiss the only claims asserted against them – that they wrongfully interfered with the plaintiffs' contractual rights.

In their First Amended Complaint the plaintiffs allege that they each own or owned an apartment complex in Oklahoma City and borrowed money from LaSalle Bank National Association, as Trustee for the Registered Holders of CitiGroup Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2004-C1 ("lender"), in three separate loan transactions. In exchange for the loans the plaintiffs executed separate promissory notes, each of which is secured by a mortgage covering the related apartment property. Wachovia acts as the master servicer for the lender, GEMSA as its loan servicer and LNR as the special servicer.

In the fall of 2007, the plaintiffs decided to sell or refinance the properties. Although the promissory notes include significant prepayment premiums or penalties, they allow the plaintiffs to defease the loans. The plaintiffs contracted with Wachovia, which marketed itself as a defeasance specialist, to handle the defeasance transaction. When Wachovia failed to structure the defeasance properly, the plaintiffs instructed Wachovia to terminate the transaction. The plaintiffs assert that subsequent attempts to complete the defeasance failed, due to the actions or inactions of one or more of the defendants.

The plaintiffs assert that the defendants interfered with their attempts to defease the loans in various ways. They allege that GEMSA misapplied payments and then claimed the loans were in default. They contend that both GEMSA and LNR wrongfully concluded that certain insurance coverage on one or more of the properties had lapsed, force-placed coverage, and initially insisted that the plaintiffs pay the costs incurred in connection with that coverage before the loans could be defeased. The plaintiffs claim GEMSA and LNR agreed to assist in effecting the defeasances, but "were of no help at all." Finally, the plaintiffs allege that LNR has concluded the loans are in default and cannot be defeased and has insisted that the plaintiffs execute a "'Pre-Negotiation Letter'...as a condition to even discussing the matter." *Id.* at ¶37.

The plaintiffs contend Wachovia breached its defeasance agreements with them and was unjustly enriched by their payment of certain cancellation damages. They allege that GEMSA and LNR were aware of the plaintiffs' "existing contractual right under the Notes and other loan documents to defease the Mortgages" and their "existing contractual rights under their agreement with Wachovia" and wrongfully interfered with those separate contract

rights. First Amended Complaint, ¶¶ 50, 51. GEMSA and LNR argue that these allegations are insufficient under Fed.R.Civ.P.12(b)(6). They contend the plaintiffs' claims are conclusory and not legally or factually plausible.

When considering whether the plaintiffs' claims should be dismissed under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiffs, the nonmoving party. Anderson v. Suiters, 499 F.3d 1228, 1232 (10th Cir.2007). A claim will be dismissed if "the complaint does not contain enough facts to state a claim to relief that is plausible on its face." *Id.* (Internal quotations omitted). "'[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.'" *Id*. (quoting Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.2007)).

The court agrees with the defendants that the plaintiffs' allegations are insufficient. "The elements of a claim for malicious interference are: 1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference." Tuffy's, Inc. v. City of Oklahoma City, 212 P.3d 1158, 1165 (Okla. 2009). In addition, an agent or employee of a "principal cannot be held liable for interfering with a contract between the principal and a third party," Martin v. Johnson, 975 P.2d 889, 896 (Okla. 1998), unless the agent was acting in bad faith and against the interests of the principal. *Id.* at 896-97.

The plaintiffs do not allege that LNR and GEMSA were acting in bad faith and

contrary to the interests of the lender,[1] a party to the notes. Under Martin, in the absence of such allegations they cannot be held liable for their asserted interference with the plaintiffs' contractual rights under the notes.[2]

The court concludes that the plaintiffs' claim that LNR and GEMSA interfered with their contractual rights with Wachovia under the defeasance agreement also fails, but not for the reasons asserted by the defendants.[3] The element of malice in a tortious interference with business relationship claim "clearly requires a showing of bad faith." Tuffy's, Inc., 212 P.3d at 1165. The improper conduct alleged here generally consists of actions taken by the defendants in their roles as the lender's agents.[4] In the absence of an allegation that the defendants were acting in bad faith and not merely performing their duties on behalf of the

---

[1]*The plaintiffs assert in their response brief that LNR and GEMSA failed to set forth any agreement establishing their relationship with the lender. However, the plaintiffs allege in the First Amended Complaint that "GEMSA acts as the 'Loan Servicer' for the Lender in connection with the Notes and Mortgages," providing the day to day administration of loans, and that "LNR acts as the 'Special Servicer' for the Lender in connection with the Notes and Mortgages," assuming "administration of loans which are considered to be in default. First Amended Complaint, ¶¶ 13, 14.*

[2]*The plaintiffs in effect concede this point, stating that "while GEMSA and LNR might be correct in their assertion that generally an agent cannot interfere with his principal's agreement ...." Plaintiff's response, p. 7.*

[3]*The defendants' argument is based on the assumption that "any contractual rights Plaintiffs have with Wachovia must arise from an agreement to which Lender is a party." Defendants' motion, p. 10. However, the court cannot reach that "plausible conclusion," id., from the complaint alone. While the documents attached to the defendants' reply brief might support their assertion the court has not considered them. See infra note 6.*

[4]*As the plaintiffs do not claim that the loans were current, the alleged actions of LNR and GEMSA appear to be consistent with their duties as the lender's agents.*

lender, the court finds the claim, as pleaded, is deficient.[5]

Accordingly, the defendants' motion [Doc. #42 ] is **GRANTED**.[6]  The plaintiffs' tortious or malicious interference with contract claims against defendants GEMSA and LNR are dismissed.  Plaintiffs are granted leave to file, within **ten (10) days**, an amended complaint addressing these deficiencies if warranted by the circumstances.

**IT IS SO ORDERED**.

Dated this 2nd day of November, 2009.

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[5]*The plaintiffs rely on certain Pre-Negotiation Letters, which they have attached to their response brief.  They contend the letters demonstrate that LNR's actions in connection with the letters were self-motivated and that the letters required the plaintiffs to release any claims they had against LNR before LNR would consider allowing the plaintiffs to defease the loans. However, the letters reflect that LNR is proceeding as the lender's representative. See plaintiff's Exhibit 1(LNR is the "Special Servicer and representative of Lender with respect to the Loan, and has the authority, on behalf of Lender, to discuss and to meet with representatives of Borrower to review the status of the loan ...." ).  The letters do include a release provision, which discharges each "party."  Assuming LNR is a party, the court does not interpret the letters as demonstrating that LNR was proceeding solely or primarily for its own benefit.*

[6]*As the court did not consider the exhibits attached to the defendants' reply brief, there was no need to allow the plaintiffs to address the defendants' arguments based on those documents.*